FILED
CHARLOTTE, NC

DEC 1 0 2024

US DISTRICT COURT
WESTERN DISTRICT OF NC

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. **3:24-CR-261-FDW** |
| | ) | |
| v. | ) | **BILL OF INDICTMENT** |
| | ) | |
| | ) | Violation: |
| JONATHAN MOZEAK | ) | 18 U.S.C. § 1956(h) |
| | ) | |

**THE GRAND JURY CHARGES:**

**COUNT ONE**
(*Money Laundering Conspiracy*)

**A.     Introduction**

At all times material to this Bill of Indictment:

1.     iNetwork Auto Group Inc. was a used car dealership organized under the laws of the State of North Carolina and located at 1424 Berryhill Road, Charlotte, North Carolina 28208.

2.     "The Scorpio" was a nightclub organized under the laws of the State of North Carolina and located at 2301 Freedom Drive, Charlotte, North Carolina 28208.

3.     J.H.M. (charged elsewhere) was the owner of iNetwork Auto Group Inc. and was principally responsible for all of its operations.

4.     V.E.J. (charged elsewhere) was a salesman who J.H.M. employed at iNetwork Auto Group Inc.

5.     J.H.M. was the owner of The Scorpio and was principally responsible for all of its operations.

6.     G.D. (charged elsewhere) was a large-scale narcotics trafficker.

7.     **JONATHAN MOZEAK** was a courier who worked for G.D.

**B.      The Conspiracy**

8.      From an unknown date, but at least in or about July of 2017, through at least in or about January of 2021, in the Western District of North Carolina and elsewhere, **JONATHAN MOZEAK** did knowingly combine, conspire, and agree with G.D., J.H.M., V.E.J. and with other persons both known and unknown to the Grand Jury, to commit a money laundering offense in violation of Title 18, United States Code, Section 1956, to wit: to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, drug trafficking, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

**C.      Manner and Means of the Conspiracy**

9.      The manner and means by which **JONATHAN MOZEAK**, G.D., J.H.M., V.E.J., and their co-conspirators sought to accomplish the objectives of this conspiracy included, among others, the following:

a.      It was a part of the conspiracy that, in their capacity as owner/operator and salesman of iNetwork Auto Group Inc., respectively, J.H.M. and V.E.J. sold approximately 20 vehicles to G.D., an individual they knew was a drug dealer, or of whom they were willfully blind to that fact;

b.      It was further part of the conspiracy that J.H.M. and V.E.J. put the sales paperwork, titles, and registrations of vehicles sold to G.D. from iNetwork

2

Auto Group Inc. in the names of "straw purchasers"—that is, persons other than the actual buyer and intended user of that vehicle—for the purpose of concealing the identity of the true buyer, G.D, and the illicit nature, source, ownership, and control of the cash that G.D. used to pay for the vehicles;

c. It was further part of the conspiracy that J.H.M. and V.E.J. sometimes forged the signatures of these straw purchasers on sales, registration, and title paperwork for these vehicles without the straw purchasers' knowledge;

d. It was further part of the conspiracy that J.H.M. frequently notarized the sales, registration, and title paperwork for these vehicles as a notary public while knowing that the straw purchasers were not the true purchasers of the vehicles, and sometimes when the straw purchasers were not even present to sign the paperwork;

e. It was further part of the conspiracy that J.H.M. and V.E.J. knowingly received from G.D. cash payments for these vehicles, frequently in amounts greater than $10,000, while knowing or being willfully blind to the fact that the cash represented property derived from some form of criminal activity;

f. It was further part of the conspiracy that J.H.M. used at least $200,000 in cash that he received from G.D., while knowing that the cash represented proceeds from G.D.'s drug trafficking activities, and engaged in financial transactions with that money to pay for renovations to a building adjacent to iNetwork Auto Group Inc., while knowing that such financial transactions were designed at least in part to conceal the illicit nature, source, ownership, and control of G.D.'s drug trafficking proceeds;

g. It was further part of the conspiracy that J.H.M. solicited at least

3

$100,000 in cash from G.D., while knowing that the money represented the proceeds of G.D.'s drug trafficking activities, to help J.H.M. engage in a financial transaction to buy The Scorpio nightclub, while concealing G.D.'s ownership interest in The Scorpio;

h. It was further part of the conspiracy that J.H.M. subsequently engaged in a financial and monetary transaction to buy out G.D.'s ownership interest in The Scorpio for at least $100,000, and that he gave that money in cash to G.D., who in turn gave it to **JONATHAN MOZEAK**;

i. It was further part of the conspiracy that **JONATHAN MOZEAK** attempted to drive that money and additional drug proceeds to G.D.'s drug trafficking source of supply in California, knowing that they represented the proceeds of some form of unlawful activity;

j. It was further part of the conspiracy that, after law enforcement seized that money, **JONATHAN MOZEAK**, at G.D.'s direction, submitted a fraudulent claim to the United States government under penalty of perjury falsely representing that **JONATHAN MOZEAK** was the lawful owner of the money and that he legally obtained the money from the sale of The Scorpio;

k. J.H.M. provided false and fraudulent documentation and representations in support of **JONATHAN MOZEAK's** false and fraudulent claim.

All in violation of Title 18, United States Code, Section 1956(h).

4

# NOTICE OF FORFEITURE

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

    a.    All property involved in the violations set forth in this bill of indictment; and

    b.    If, as set forth in 21 U.S.C. § 853(p), any property described in (a) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant to the extent of the value of the property described in (a).

A TRUE BILL:



FOREPERSON

DENA J. KING
UNITED STATES ATTORNEY

THOMAS KENT
ASSISTANT UNITED STATES ATTORNEY

5